

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

MAR 23 2001

2001 MAR 23  PM 4: 21

LORETTA G. WHYTE
CLERK

**United States District Court**

**Eastern District of Louisiana**

| | | |
|---|---|---|
| MFLC Partners, A Louisiana Partnership In Commendam | * <br> * <br> * | Civil Action No. 00-0379 <br><br> Section "J" |
| Versus | * <br> * | Mag. 1 |
| Randall-Morgan Construction Company, Inc. | * <br> * | |

<u>**Memorandum In Opposition To Motion For Summary Judgment**</u>

**May It Please The Court:**

Defendant and counter-plaintiff, Randall-Morgan Construction, Inc., (Randall-Morgan),

opposes the motion for summary judgment filed on behalf of counter-defendants MFLC Partners, a

Louisiana Partnership in Commendam (MFLC), Mirabeau Family Learning Center, Inc., (Mirabeau)

Michael Vales (Vales) and the Federal National Mortgage Association (Fannie Mae) for the following

reasons to wit:

## I. <u>Factual Background</u>

Mirabeau is a non-profit organization. Michael Vales is the president of Mirabeau. Mirabeau

set out to renovate Filmore Apartment Complex to provide housing for the needy. The renovation

was to be funded in part through Fannie Mae. Randall-Morgan was selected to perform the

construction renovations. To achieve federal funding and complete the project, MFLC was created

Fee
Process
X Dkted
CtRmDep
Doc.No. 40

and made up of Mirabeau, Randall-Morgan and Fannie Mae. MFLC became the owner of Filmore Apartment Complex. Thus, Randall-Morgan actually became an approximate 1/10[th] owner of the Filmore Apartment Complex. On November 13, 1997, a HUD construction contract was entered into between Randall-Morgan and MFLC to perform the construction work on the apartments. See Exhibit A of Movers motion. A separate agreement was also entered into on that same date between Mirabeau and Randall-Morgan to provide for payment for the construction that was not part of the HUD construction contract form. See Exhibit 10.

After several months of working on the renovations, it became apparent that the scope of the work designated by the contracts had to be expanded and the costs were going to increase substantially. Massive termite damage and load deficiencies were discovered See Exhibit 2 (with photographs). At all times, Randall-Morgan, through Ken Prieur, President, and Michael Vales discussed additional work to be performed. Michael Vales specifically directed Randall-Morgan to perform the extra work and *not* to seek written approval from the Architect as set forth in the contract. See Exhibit 8. Additionally, Michael Vales contracted with other subcontractors to perform work at the site and without Randall-Morgan's knowledge, directed that the bill for such services be sent to Randall-Morgan. See Exhibit 8.

In January of 1999, it became obvious to the parties involved that the project would run out of money due to the unexpected cost increases. On February 12, 1999, a meeting at the HUD office was held. Michael Vales, Tracy Jeandron (Architect), Gerald Billings (Architect), Ken Prieur of Randall-Morgan, Richard Pierce of HUD and others were present. See Exhibit 3. As a result of that meeting, Randall-Morgan agreed to voluntarily withdraw from the project pursuant to being paid all monies due. However, at this time it was not clear how much money was owed to Randall-Morgan. Thus,

2

Randall-Morgan agreed to prepare its final billing with documentation and the other parties agreed to pay Randall-Morgan the monies due. See Exhibit 3.

Randall-Morgan then contracted a certified public accountant to perform a cost audit in compliance with HUD Form 92330-A. The audit was performed and the certified public accountant found Randall-Morgan was owed a grand total of $1,497,369.44. (This figure did not consider payments already received in the amount of $1,178,133.74). See Exhibit 4. The audit was distributed to all parties of interest.

After the parties of interest received the audit, a discussion commenced on how Randall-Morgan was to be paid and by whom. Given the federal regulations and procedures, there was much confusion among Michael Vales, Ben Ethridge of Fannie Mae, and Susan Hall of Highland Mortgage as to how such payment would be funded. Finally, after much discussion was not resulting in any action or payment on behalf of Randall-Morgan, Randall-Morgan sent a letter to Michael Vales on May 24, 1999 requesting payment of $440,788.93 (the difference between the amount owed as certified by the certified public accountant and the amount already received). See Exhibit 5.

In response, Michael Vales sent a letter to Randall-Morgan, through Ken Prieur, dated June 30, 1999 and received July 7, 1999 advising that it would not be paying Randall-Morgan the amount owed. See Exhibit 6. **For the first time Randall-Morgan realized that it would not receive its monies owed without further dispute.**

As a result **and within 21-days of discovering the dispute** Randall-Morgan filed a mechanic's lien on July 15, 1999 **which constitutes a Claim**. See Exhibit 7.

After the lien was filed there was again much conversation between all parties of interest, including the architects to determine how this issue of nonpayment could be resolved. A meeting was

3

even conducted again at the HUD office where in the Architects were present on August 11, 1999. However, the conflict could not be resolved.

MFLC then filed a Petition for Writ of Mandamus to have the lien cancelled. MFLC claimed that Randall-Morgan had signed a lien waiver in the contract which precluded the filing of the lien. Randall-Morgan argued that the lien waiver provision was only applicable to each specific request for payment as each was paid. The Civil District Court could not resolve the conflicting language contained in the contract. See Exhibit 9. The Civil District Court ruled that while the lien would be cancelled, Randall-Morgan's rights to pursue monies owed on the contract would be reserved. See Exhibit 9. Randall-Morgan then filed a reconventional demand seeking such payment.

Unfortunately, the undertaking of this project while for a worthwhile cause to help the needy, was not successful. The cost of the project was grossly underestimated. Randall-Morgan expended a significant amount of money with the intention of being paid. Now, when there is no money left for the project everyone wants to walk away and deny obligations. Randall-Morgan has become the scapegoat and is the only entity who will be ruined as a result of this well intended effort to help the poor.

## II. Law And Argument

A party is not entitled to a summary judgment if there are genuine issues of material fact and if the moving party is not entitled to judgment as a matter of law. Rule 56. A review of the evidence in this matter demonstrates that summary judgment is *not* warranted and should *not* be granted. The amended statute providing that summary judgment procedure is favored and shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions does not change burden of proof in summary proceeding. *Tonubbee v. River Parishes Guide*, 97-440

4

(La.App. 5 Cir. 10/28/97), 702 So.2d 971, writ denied 97-3012 (La. 2/13/98), 709 So.2d 747,

certiorari denied 119 S.Ct. 142, 525 U.S. 858, 142 L.Ed.2d 115, rehearing denied 119 S.Ct. 580, 525

U.S 1034, 142 L.Ed.2d 484. The Amendment to the article governing summary judgment, setting

forth purposes of the summary judgment procedure did not change the law regarding the burden of

proof in a summary judgment and that burden of proof still remains on the mover. *Murphy v. L&L*

*Marine Transp., Inc.*, 97-33 (La.App. 5 Cir. 5/28/97), 695 So.2d 1045.

 The effect of the statutory amendment stating that the summary judgment procedure is

favored was to level the playing field between the parties in two ways: first, supporting evidence

submitted by parties should be scrutinized equally, and second, overriding presumption in favor of

trial on merits was removed; however, this change did not alter the burden of proof, and the movant

still has the burden of establishing that no material factual issue exists. *Bilbo for Basnaw v. Shelter*

*Ins. Co.*, 96 1476 (La.App. 1 Cir. 7/30/97), 698 So.2d 691, writ denied 97-2198 (La. 11/21/97), 703

So.2d 1312. The burden of proof on a motion for summary judgment remains with the movant and is

not shifted to the non-moving party until the mover has properly supported the motion and carried the

initial burden of proof; only then does the non-moving party have to submit evidence showing the

existence of specific facts establishing a genuine issue of material fact. *Tanner v. Reynolds Metals*

*Co.*, 98 1456 (La.App. 1 Cir. 6/25/99), 739 So.2d 893.

 On a motion for summary judgment, the mover must present supportive evidence that the

motion for summary judgment should be granted, and once the mover has made a prima facie

showing that the motion should be granted, the burden of production shifts to the nonmoving party to

present evidence demonstrating the existence of issues of material fact which preclude summary

judgment. *Delphin v. Montealegre*, 98-700 (La.App. 3 Cir. 4/7/99), 732 So.2d 757, writ denied 99-1370 (La. 7/2/99), 747 So.2d 21.

**The 21-day prescriptive period is not applicable due to oral modifications of the contracts.**

Movers aver that the AIA General Conditions were effectively incorporated by reference into the agreement between MFCL and Randall-Morgan and under those general conditions a 21-day prescriptive period is established and enforceable. Randall-Morgan does not dispute that the AIA General Conditions were incorporated by reference into the agreement between Randall-Morgan and MFLC. However, Randall-Morgan does dispute that the AIA General Conditions were incorporated into the agreement between Randall-Morgan and Mirabeau. See Exhibit 10. Further, Randall-Morgan does dispute that the 21-day prescriptive period was applicable to its claim for additional monies owed for oral change orders which constitute a modification of the original contract.

As owner, MFLC had the right to order changes to the work if additional compensation was to be paid to Randall-Morgan. Even though the original contract contained a provision that the MFLC is only liable if change orders are in writing, the contract was modified by oral changes. *Pelican Electrical Contractors v. Neumyer*, 419 So.2d 1 (La. App. 4 Cir. 1982); *Nat Harrison Associates, Inc. v. Gulf States Utilities Co.*, 491 F.2d 578 (5th Cir. 1974), rehearing denied, 493 F.2d 1405. These oral changes were directed by the owner, MFLC, through Michael Vales, and at his request. Furthermore, the changes were so extensive that it cannot be supposed to have been made without the owner's knowledge. Last, these changes by Randall-Morgan were necessary and had not initially been foreseen by any of the parties. In addition, Michael Vales specifically directed that Randall-Morgan *not* have the Architect approve any changes because it would only cause the project

6

more expense.  See Exhibit 8.  Therefore, the entire procedure for noticing a claim as set forth in the

AIA Guideline was modified.  Michael Vales, as representative of Mirabeau and MFLC, changed the

very terms of the contract of which it now employs in an effort to prevent rightful payment to

Randall-Morgan.


**Under the AIA Guidelines, even if applicable, Randall-Morgan was not obligated to notice the**
***Architect* with the claim prior to filing mechanic's lien.**

        Paragraph 4.3.2 of the General Conditions of the Contract for Construction, AIA Document

A201 contains the following language:

> **Decision of Architect.** Claims, including those alleging an error or omission by the
> Architect shall be referred initially to the Architect for actions as provided in
> Paragraph 4.4.  A decision by the Architect, as provided in Subparagraph 4.4.4, shall
> be required as a condition precedent to arbitration or litigation of a Claim between
> the Contractor and Owner as to all such matters arising prior to the date final
> payment is due, regardless of (1) whether such matters relate to execution and
> progress of the Work or (2) the extent to which the Work has been completed.  **The
> decision by the Architect in response to a Claim shall not be a condition
> precedent to arbitration or litigation in the event** (1) the position of the Architect
> is vacant, (2) the Architect has not received evidence or has failed to render a
> decision within agreed time limits, (3) the Architect has failed to take action required
> under Subparagraph 4.4.4 within 30 days after the Claim is made, (4) 45 days have
> passed after the Claim has been referred to the Architect or (5) **the Claim relates to
> a mechanic's lien**.  See Exhibit 1 (Emphasis Added).


Randall-Morgan's claim *does* relate to a mechanic's lien.  Therefore, under the specific language of

the contract, even if held to be applicable in this instance, which is denied, Randall-Morgan did not

have to notify the Architect of the claim.


7

**Under the AIA Guidelines, even if applicable, Randall-Morgan *did* notice the claim within the 21-day period.**

Furthermore, assuming the 21-day period is applicable, which is denied, Randall-Morgan *did* provide notice of the claim within 21-days of discovering the dispute. Randall-Morgan sent a letter to Michael Vales on May 24, 1999 requesting payment of $440,788.93 (the difference between the amount owed as certified by the certified public accountant and the amount already received). See Exhibit 5.

In response, Michael Vales sent a letter to Randall-Morgan, through Ken Prieur, dated June 30, 1999 and received July 7, 1999 advising that it would not be paying Randall-Morgan the amount owed. See Exhibit 6. **For the first time Randall-Morgan realized that it would not receive its monies owed without further dispute.** As a result **and within 21-days of discovering the dispute** Randall-Morgan filed a mechanic's lien on July 15, 1999 **which constitutes a Claim**. See Exhibit 7. Therefore, movers argument must fail and summary judgment must be denied.

**All parties of interest, including the Architects, were aware of the outstanding debt to Randall-Morgan**

A meeting was conducted on February 12, 1999 attended by Richard Pierce, Mike Vales, Ken Prieur, Tracy Jeandron (Architect), Gerald W. Billes (Architect) and others wherein it was decided that Randall-Morgan would voluntarily withdraw from the project pursuant to being paid all monies due. See Exhibit 3.

At that same meeting it was agreed that Randall-Morgan would prepare documentation required for cost Certification and undergo an audit for the HUD audit process. See Exhibit 3. The independent audit performed by The Schafer Group, Ltd determined that Randall-Morgan was owed

a grand total of $1,497,369.44. See Exhibit 4. By letter dated, May 24, 1999, Randall-Morgan advised Michael Vales that he had received $1,178,133.74 and that he is owed $440,788.93. See Exhibit 5. By letter dated June 30, 1999 and received by Randall-Morgan on July 7, 1999, Michael Vales first advised Randall-Morgan that it would not be paid the amount due. See Exhibit 6. On July 15, 1999, Randall-Morgan filed a mechanic's lien for the amount owed. See Exhibit 7.

Everyone involved, including the Architects, were aware that Randall-Morgan was still owed money on the project. Therefore, for Movers to claim the Architect was unaware of any claim or potential claim is disingenuous. The purpose of the 21-day provision is so that the parties involved will not be surprised by a claim down the road after all monies have been expended. Randall-Morgan's actions not only comply with the provisions of the contracts, but fulfill the very spirit of this 21-day provision.

## Prescription is not favored.

Prescription is not favored under the law and every benefit should be provided to the party against whom prescription is alleged.

Prescriptive statutes are strictly construed against prescription and in favor of the claim. *Barksdale v Lincoln Builders, Inc.*, 764 So.2d 223 (La. App. 2d Cir. 6/21/00). Generally, prescriptive statutes are strictly construed, and facts of this case must bring action clearly within specific provision of law sought to be applied. *Brousard v. Sears*, 568 So.2d 225 (La. App. 3rd Cir. 1990). Court should resolve doubts about a prescription question in favor of giving the litigant his day in court. *Hunter v. Tensas Nursing Home*, 743 So.2d 839 (La. App. 2d Cir. 10/27/99). Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to

9

be extinguished, with two possible constructions, the one that favors maintaining, as opposed to barring, an action should be adopted *Hunter, Id.* Prescriptive statutes are strictly construed in favor of maintaining, rather than barring, actions. *Sutton v. Short Stop Hamburger,* 737 So.2d157 (La.App. 2 Cir. 10/27/99)

Further, movers fail to provide any case law directly on point. Although they site a Maryland court case, the facts of the case are distinguishable. *Count Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc.,* 358 Md. 83, 747 A.2d 600 (Court of Appeals, Feb. 11, 2000). Therein, the court was considering a claim for extension of time, not for monies owed. *Id.* Also the court's discussion of the 21-day provision was merely dicta and not a central issue in the case. *Id.*

## The contract between Randall-Morgan and MFLC does not govern the relationship as to all other counter defendants.

Movers aver that all counter defendants may interpose the time bar and proceed to set forth law of partnership. However, movers ignore the fact that there are several agreements at issue which establish different obligations. First, there is the establishment of a partnership called MFLC which consists of Mirabeau, Fannie Mae, and Randall-Morgan. MFLC is the actual Owner of the Filmore Parc Apartments. Then, there is the agreement between MFLC and Randall-Morgan set forth on the HUD construction contract. See Exhibit A of Movers Motion. Last, there is the Agreement between Randall-Morgan and Mirabeau to provide a means for payment to Randall-Morgan beyond what is set for in the HUD construction contract. See Exhibit 10.

The creation of these various entities and agreements certainly interpose a genuine issue of material fact as to the relationships among the parties and the application of the agreements.

10

Furthermore, again, movers fail to cite any case law on point to substantiate their claim. Therefore, movers argument must fail.

## IV. Conclusion

The 21-day prescriptive period is not applicable due to oral modifications of the contracts. Under the AIA Guidelines, even if applicable, Randall-Morgan was not obligated to notice the *Architect* with the claim prior to filing a mechanic's lien. Further, under the AIA Guidelines, even if applicable, Randall-Morgan *did* notice the claim within the 21-day period. All parties of interest, including the Architects, were aware of the outstanding debt to Randall-Morgan.

Prescription is not favored in the law.

The contract between Randall-Morgan and MFLC does not govern the relationship as to all other counter defendants.

In conclusion, there are genuine issues of material fact and of law in this case. Movers motion for summary judgment must be denied.

Respectfully submitted,

David J. Halpern, (Bar No. 6452)
Jill A. Gautreaux (Bar No. 23750)
Maryann G. Hoskins (Bar No. 20869)
*Halpern, Danner, Martin &Miles, L.L.C.*
3900 North Causeway Boulevard
One Lakeway Center, Suite 605
Metairie, Louisiana 70002
Telephone: (504) 835-6705
Attorneys for Defendant, Randall-Morgan
Construction, Inc.

11

## Certificate of Service

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record, by placing same in the United States mail, properly addressed and postage prepaid on March 23, 2001.

_____

United States District Court

Eastern District Of Louisiana

| | | |
|---|---|---|
| MFLC Partners, A Louisiana | * | Civil Action No. 00-0379 |
| Partnership In Commendam | * | |
| | * | Section "J" |
| Versus | * | |
| | * | Mag. 1 |
| Randall-Morgan Construction | * | |
| Company, Inc. | * | |

## Statement of Material Facts At Issue

Randall-Morgan Construction, Inc. submits that genuine issues of material facts exist as to the

following:

1.    Whether at all pertinent times, counter-defendant, Michael Vales, acted in his capacity as Executive Director of the General Partner, MFLC Partners, a Louisiana Partnership in Commendam (MFLC).

2.    Whether Paragraph 4.3.3 of the General Conditions of the Contract for Construction, AIA Document A201 entered into between Randall-Morgan Construction Company, Inc. (Randall-Morgan) and MFLC contains the following language:

      **Time Limits on Claims**.  Claims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognized the condition giving rise to the Claim, whichever is later.  Claims must be made by written notice.  An additional Claim made after the initial Claim has been implemented by change order will not be considered unless submitted in a timely manner.  See Exhibit 1.

3.    Whether Paragraph 4.3.2 of the General Conditions of the Contract for Construction, AIA Document A201 contains the following language:

**Decision of Architect.** Claims, including those alleging an error or omission by the Architect shall be referred initially to the Architect for actions as provided in Paragraph 4.4. A decision by the Architect, as provided in Subparagraph 4.4.4, shall be required as a condition precedent to arbitration or litigation of a Claim between the Contractor and Owner as to all such matters arising prior to the date final payment is due, regardless of (1) whether such matters relate to execution and progress of the Work or (2) the extent to which the Work has been completed. The decision by the Architect in response to a Claim shall not be a condition precedent to arbitration or litigation in the event (1) the position of the Architect is vacant, (2) the Architect has not received evidence or has failed to render a decision within agreed time limits, (3) the Architect has failed to take action required under Subparagraph 4.4.4 within 30 days after the Claim is made, (4) 45 days have passed after the Claim has been referred to the Architect or (5) the Claim relates to a mechanic's lien. See Exhibit 1.

4.    Whether on September 2, 1998 and November 23, 1998, Randall-Morgan executed lien waivers in exchange for payment by MFLC for construction connected with their contract and whether such waivers were limited to the amount requested and/or paid at that time.

5.    Whether there were many changes to the Scope of the Work due to unforeseen problems and requested changes by Michael Vales of which the Architects were aware. See Exhibit 2.

6.    Whether due to the many changes to the Scope of the Work, Randall-Morgan submitted a Revised Pricing Schedule on September 30, 1998 to the Architects and others. See Exhibit 2.

7.    Whether a meeting was conducted on February 12, 1999 attended by Mike Vales, Richard Pierce of HUD, Ken Prieur of Randall-Morgan, Tracy Jeandron (architect), Gerald W. Billes (architect) and others wherein it was decided that Randall-Morgan would voluntarily withdraw from the project pursuant to being paid all monies due. See Exhibit 3.

8.    Whether at that same meeting it was agreed that Randall-Morgan would prepare documentation required for cost Certification and undergo an audit for the HUD audit process. See Exhibit 3.

2

9.          Whether the independent audit performed by The Schafer Group, Ltd determined that Randall-Morgan was owed a grand total of $1,497,369.44. See Exhibit 4.

10.         Whether by letter dated, May 24, 1999, Randall-Morgan advised Michael Vales that he had received $1,178,133.74 and that he was owed $440,788.93. See Exhibit 5.

11.         Whether by letter dated June 30, 1999 and received by Randall-Morgan on July 7, 1999, Michael Vales first advised Randall-Morgan that it would not be paid the amount due. See Exhibit 6.

12.         Whether on July 15, 1999, Randall-Morgan filed a mechanic's lien for the amount owed. See Exhibit 7.

13.         Whether the original construction contract between Randall-Morgan and MFLC was verbally modified such that written change orders were no longer required. See Exhibit 8.

14.         Whether Michael Vales verbally modified the original construction contract between Randall-Morgan and MFLC Partners when he directed that Randall-Morgan not advise the Architect of any change orders and additional work performed at the site so as to reduce expenses. See Exhibit 8.

15.         Whether Randall-Morgan submitted its claim for monies owed it to the Architect as contemplated by the contract and/or the modified agreement.

16.         Whether Randall-Morgan was even obligated under the contract to submit its mechanic's lien for moneys owed to the Architect. See Exhibit 1, Paragraph 4.3.2.

17.         Whether Randall-Morgan was obligated under the orally modified contract to submit its mechanic's lien for moneys owed to the Architect. See Exhibit 8.

18.         Whether on October 15, 1999, the Judge of Civil District Court ordered that the mechanic's lien be canceled and specifically reserved to Randall-Morgan the right to pursue alleged monies owed due to the inability of the Court to resolve the conflicting language of the contract regarding lien waivers. See Exhibit 9.

3

Respectfully submitted,

David J. Halpern, (Bar No. 6452)
Jill A. Gautreaux (Bar No. 23750)
Maryann G. Hoskins (Bar No. 20869)
*Halpern, Danner, Martin & Miles, L.L.C.*
3900 North Causeway Boulevard
One Lakeway Center, Suite 605
Metairie, Louisiana 70002
Telephone: (504) 835-6705
Attorneys for Defendant, Randall-Morgan
Construction, Inc.

## Certificate of Service

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record, by placing same in the United States mail, properly addressed and postage prepaid on March 23, 2001.

4

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED