

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2001 MAR 28 PM 1:55
MAR 28 2001
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MFLC PARTNERS, A LOUISIANA PARTNERSHIP IN COMMENDAM | CIVIL ACTION NO. 00-0379 |
| Versus | SECTION "J" |
| RANDALL-MORGAN CONSTRUCTION COMPANY, INC. | MAG. 1 |

### REPLY TO RANDALL-MORGAN'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT**, through undersigned counsel, come: Plaintiff and Counterdefendant MFLC Partners, a Louisiana Partnership in Commendam, and Counterdefendants Mirabeau Family Learning Center, Inc., a Louisiana corporation domiciled in the Parish of Orleans, Michael Vales, a person of full age and majority domiciled in the Parish of Orleans, and the Federal National Mortgage Association, (together, "Movers") who submit this memorandum in reply to the opposition memorandum filed by Randall-Morgan and in further support for Movers' motion for summary judgment.

GAMD-NO:116066-2

_ree_
_Process_
X _Dktd_
_CtRmDep_
Doc.No. 44

I.  **THE 21-DAY PRESCRIPTIVE PERIOD IS APPLICABLE IN THIS CASE BECAUSE THE CONTRACT WAS NOT ORALLY MODIFIED**

Even assuming an oral modification of this construction contract is valid (which is denied as contrary to Article 1(D) of the Agreement itself), Randall-Morgan has come forward with insufficient evidence to establish that an oral modification took place. The party who asserts that an obligation has been modified must prove by a preponderance of the evidence facts or acts which give rise to the modification.[1] Additionally, where, as here according to Randall-Morgan's counterclaim, a contract (or modification thereto) has a value in excess of $500.00, the alleged modification must be proven by at least one credible witness and other corroborating circumstances.[2] An interested party in the litigation may be his own credible witness, and the corroborating circumstances may be general.[3] However, the "corroborating circumstances" must come from a source other than the party serving as his own "credible witness."[4]

---

[1]  See LA. CIV. CODE art. 1831 (West 2000).

[2]  See LA. CIV. CODE art. 1846 (West 2000). See also Snedegar v. Noel Estate, Inc., 438 So. 2d 677 (La. App. 2d Cir. 1988).

[3]  See Bossier Marble, Inc. v. Kelly's Truck Terminal, Inc., 530 So. 2d 1198 (La. App. 2d Cir. 1988).

[4]  See Hilliard V. Yarbrough, 488 So. 2d 1038 (La. App. 2d Cir. 1986).

*Wisinger v. Casten*[5] is particularly illuminating. In that case, a dispute arose between a restauranteur and his electrical contractor. The central issue in the case was whether "other corroborating circumstances" existed that would allow for a finding of oral modification.[6] The court found that the record was bereft of any evidence of the restauranteur's agreement to pay the extra costs alleged by the electrician (other than the electrician's own). In fact, the record specifically showed that the restauranteur denied the amounts in question.[7] It can be seen then that testimony only from the party making the allegation without independent "corroborating circumstances" is not enough to establish even the existence of an oral modification of a written construction contract.

In the instant case, Ken Prieur, President of Randall-Morgan, did serve as his own witness by virtue of an affidavit executed by him on March 23, 2001.[8] In that affidavit, Mr. Prieur asserts that Mike Vales, as General Partner of MFLC, orally ordered the change orders. Further, Mr. Prieur asserts that Mr. Vales

---

[5] 550 So. 2d 685 (La. App. 2d Cir. 1995).

[6] *See id.* at 687.

[7] *See Wisinger*, 550 So. 2d at 688.

[8] *See* Defendant's Exhibit 8.

instructed all parties that the Architect not be informed of these changes in order to reduce costs.[9] Movers, of course, deny this allegation.

However, Mr. Prieur comes forward with no independently verifiable "corroborating circumstances" that would justify the Court finding that the contract was orally modified. No documents or other records of conversation were entered into the record to establish that Mr. Vales verbally authorized the alleged change orders.[10]

In its Memorandum in Opposition to Movers' motion, Randall Morgan asserts: "once the mover has made a prima facie showing that the motion should be granted, the burden of production shifts to the nonmoving party to present evidence demonstrating the existence of issues of material fact which preclude summary judgment."[11] Thus, Mr. Prieur failed to meet his burden of production in regard to the alleged oral modification, and Movers' motion for summary judgment must be granted.

Randall-Morgan's opposition is legally insufficient for a separate reason, namely, that there is no allegation or evidence

---

[9] *See id.*

[10] *See generally* Defendant's Exhibits.

[11] Defendant's Memorandum in Opposition at 6.

to establish that the alleged oral modification <u>pertained to the 21 day prescriptive period</u>. Rather, in its brief and supporting affidavit, Randall-Morgan alleges that the agreement was changed <u>with respect to its change order procedure</u>.[12] Thus, in its brief, Randall-Morgan states: "Even though the original contract contained a provision that the MFLC is only liable if change orders are in writing, the contract was modified by oral changes ... Michael Vales specifically directed that Randall-Morgan <u>not</u> have the Architect approve any changes because it would only cause the project more expense."[13] Similarly, Kenneth M. Prieur, Randall-Morgan's president, submitted an affidavit in opposition to Movers' motion for summary judgment; the affidavit averred: "The contract was modified as follows: Michael Vales specifically ordered that no change orders were to be submitted to the architect because Michael Vales wanted to save the cost of the architect's involvement in the change order process."[14] This showing does not meet Randall-Morgan's burden of production to create a fact issue as to oral modification of the 21 day prescriptive period.

---

[12] The change order procedure is contained in AIA General Conditions ¶ 7.2.

[13] Defendant's Memorandum in Opposition at 6.

[14] Defendant's Memorandum in Opposition, Exhibit 8 at 2, ¶ 14; *see also* ¶ 15.

## II. RANDALL-MORGAN ADMITS HAVING KNOWLEDGE OF A CLAIM AND NOT PROVIDING TIMELY NOTICE OF IT.

In its Memorandum in Opposition, Randall Morgan admits that "[i]n January of 1999, it became obvious to the parties involved that the project would run out of money due to unexpected cost increases" and that a certified public accountant subsequently performed a cost audit, which found "that Randall-Morgan was owed a grand total of $1,497,133.74."[15] This figure did not account for payments already made to Randall-Morgan in the amount of $1,178,133.74.[16] This audit is attached to Randall-Morgan's opposition memorandum as Exhibit 4; it was accepted and signed by Kenneth M. Prieur on behalf or Randall-Morgan on April 15, 1999.

Thus, Randall-Morgan "first recognized the condition giving rise to the Claim" (as AIA General Conditions paragraph 4.3.3 provides) <u>in January 1999</u> but in no case later than <u>April 15, 1999</u>. However, the only actions taken by Randall-Morgan after this point were to send MFLC its letter of May 24, 1999 (well past the 21 day period and not constituting notice to the architect) and to file a lien on July 15, 1999 (conduct forbidden by the contract and even farther beyond the 21 day period).

---

[15]   Defendant's Memorandum in Opposition at 2-3.

[16]   *Id.* at 3.

In short, the admissions contained in Randall-Morgan's opposition memorandum demonstrate that facts entitling defendants to summary judgment are not in dispute and furnish additional support in favor of Movers' motion for summary judgment.

III. **FILING A LIEN IS PROHIBITED BY THE AGREEMENT AND CANNOT CONSTITUTE A "CLAIM".**

Randall-Morgan contends that no notice to the architect was required within the 21 day period because its claim "relates to a mechanic's lien" within the contemplation of AIA General Conditions 4.3.2.[17] Randall-Morgan also contends that its lien filing of July 15, 1999, _itself_, constitutes a "claim" for the purposes of that provision and was made within 21 days of knowing for the first time of the existence of its claim.[18]

These arguments overlook Article 7 of the Agreement which prohibits Randall-Morgan from filing liens.[19] Article 1 of the Agreement additionally provides that "the provisions of this instrument ... take precedence over all inconsistent provisions in the said AIA General Conditions."[20] Indeed, in ordering Randall-

---

[17]  _Id._ at 7.

[18]  _Id._ at 8.

[19]  Mover's Motion for Summary Judgment, Exhibit A, Article 7.

[20]  _Id._, Article 1.

Morgan's lien removed, Judge DiRosa found that "the Court cannot reconcile the lien recorded in view of Art. 7 of the contract prohibiting the contractor from filing a lien herein."[21] That Randall-Morgan could not file liens is thus not merely the law; it is the law of the case.

Thus, no claim of Randall-Morgan's can "relate to a lien" for the purposes of AIA General Conditions Paragraph 4.3.3, although of course MFLC was within its rights to go to court to have the lien removed. Similarly, a lien cannot constitute a "claim" for the purpose of providing necessary notice within the 21 day prescription period: far from being permitted, it is expressly forbidden.

### IV. "ACTUAL AWARENESS" DOES NOT SATISFY THE REQUIREMENT FOR WRITTEN NOTICE OF A CLAIM BY RANDALL-MORGAN.

Randall-Morgan argues that the parties', including the architect's, actual awareness of its claims constitutes notice for the purposes of satisfying the AIA General Conditions. Putting to one side the scant record establishing this alleged "awareness," Paragraph 4.3.1 provides that "Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim."

---

[21] Defendant's Memorandum in Opposition, Exhibit 9 at 1.

Furthermore, if the architect was "aware" of Randall-Morgan's claim because it received a copy of the audit of April 15, 1999, Randall-Morgan Exhibit 4, then Randall-Morgan was itself aware of the claim as of that date and had a duty to give notice within 21 days.

## V. THE AGREEMENT BETWEEN RANDALL-MORGAN AND MFLC DOES GOVERN PRESCRIPTION AS TO THE OTHER MOVERS.

Randall-Morgan asserts in its Memorandum in Opposition that several agreements are in place that create several entities and agreements that create confusion as to what obligations are imposed. This misrepresents the documents in question. It is true that MFLC is a partnership in commendam consisting of Fannie Mae, Mirabeau Family Learning Center, and Randall-Morgan. Additionally, it is true that a Side Agreement existed, between the General Partner Mirabeau Family Learning Center and Randall-Morgan, providing for a payment of additional profit to Randall-Morgan in excess of the sums stated in the Agreement between MFLC and Randall-Morgan.

What Randall-Morgan does not delineate, however, is how these agreements create a genuine issue of material fact. Contrary to Randall-Morgan's argument, Movers assert that these documents

clearly spell out the obligations of the various parties, thus, allowing for summary judgment.[22]

The terms of the Agreement between MFLC and Randall-Morgan are ample enough to encompass Randall-Morgan's claims against all Movers. A "claim" is defined by the AIA General Conditions as "a demand or assertion by one party demanding relief as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract."[23] It is thus not limited to claims asserted <u>against a party</u>.

Furthermore, the Side Agreement between the General Partner Mirabeau Family Learning Centers would likewise require dismissal of Randall-Morgan's counterclaims. First, this Side Agreement incorporates by reference the Agreement and the AIA General Conditions: "Contractor shall construct the project in accordance with the plans and specifications which were heretofore prepared by Billes/Manning, architect, <u>and in accordance with all</u>

---

[22] See generally Defendant's Exhibit 10 and Plaintiff Exhibit A (of original Motion for Summary Judgment).

[23] See id. at ¶ 4.3.1.

<u>the terms and conditions of said Contract</u> [i.e., between Randall-Morgan and MFLC]."[24]

Moreover, if Randall-Morgan's claim is predicated upon this Side Agreement, then Randall-Morgan's claim is limited to a suit against Mirabeau and Mirabeau alone. None of the other Movers undertook any obligation with respect to the Side Agreement and Randall-Morgan has not claimed that they did.[25]

Finally, Randall-Morgan nowhere asserts any basis of independent liability on the part of Fannie Mae or Mike Vales. Thus, as discussed in Movers' original memorandum in support of this motion for summary judgment, Fannie Mae can only be held liable as a partner if the partnership can be held liable - which it cannot because as any claim against the partnership has prescribed. Similarly, Randall-Morgan as much as admits that Mike Vales is not personally liable for any of the debts in its Memorandum in Opposition. In two different instances, Randall-Morgan asserts that Mike Vales acted in his role as Executive

---

[24] Defendant's Memorandum in Opposition, Exhibit 10, ¶ 2 (emphasis added).

[25] *See id.*, ¶ 6.

Director of Mirabeau, the General Partner of MFLC.[26] No other basis of his liability is mentioned.[27]

### VI. JUDGE DIROSA'S JUDGMENT ON MANDAMUS ADDRESSED NEITHER THE MERITS OF RANDALL-MORGAN'S CLAIMS FOR MONEY NOR MOVERS' DEFENSES TO THEM

Randall-Morgan misrepresents the issue before Judge DiRosa and also the court's ruling upon it.[28] MFLC filed a petition for a writ of mandamus under LSA-R.S. 9:4833 to remove an improperly filed lien. As noted above, Judge DiRosa's ruling, expressly headed "Judgment on Mandamus," was squarely based upon Article 7 of the Agreement, which prohibited Randall-Morgan from filing liens. The issue of damages was not presented to the court in the summary proceeding, nor were MFLC's affirmative defenses to any claims Randall-Morgan might assert.

---

[26] *See* Defendant's Memorandum in Opposition at 6 ("These oral changes were directed by the owner [i.e., MFLC], <u>through Mike Vales</u>")(emphasis added); at 7 ("Mike Vales, <u>as representative of Mirabeau and MFLC</u>, changed the very terms of the contract...")(emphasis added).

[27] *See id.*, Exhibit 3 at 1 ("Mike Vales of MFLC"); Exhibit 5 (addressed to "Mr. Mike Vales, MFLC Partners"); Exhibit 6 (signed "Michael R. Vales, President, Mirabeau Family Learning Center, Inc.").

[28] *See* Defendant's Memorandum in Opposition at 4.

## VII. <u>ALTHOUGH PRESCRIPTION IS NOT FAVORED, RANDALL-MORGAN BEARS THE BURDEN OF SHOWING IT DOES NOT APPLY IN THIS CASE.</u>

Randall-Morgan asserts that prescription is not favored under the jurisprudence, and it is correct.[29] However, where the pleadings reveal on their face that prescription has run, the burden devolves to the party asserting the claims to show why it has not.[30] In this case, as discussed above, Randall-Morgan has all but admitted that prescription has run on its claim. Since Randall-Morgan did not comply with the contract's procedures for timely filing claims, it must show why prescription should not apply. Thus, Randall-Morgan has not met its required burden and summary judgment that prescription has run as a matter of law is appropriate.

### CONCLUSION

There is no dispute as to the existence of the 21 day prescriptive period. There is no dispute, and in fact Randall-Morgan admits, that it was not complied with. Randall-Morgan's purported oral contractual amendment has not been established as required by law, and in any case is not directed to the

---

[29] *See* Lima v. Schmidt, 595 So. 2d 624, 629 (La. 1992). *See also* Defendant's Reply in Opposition to Motion for Summary Judgment at 9-10.

[30] *Lima*, 595 So. 2d at 628 (citing Bock v. Harmon, 526 So. 2d 292 (La. App. 2d Cir. 1988)).

prescriptive period at issue. Randall-Morgan has advanced no argument as to why all movers are not entitled to interpose the prescriptive period.

Accordingly, Movers urge this court to enforce their contractual rights by granting their motion for summary judgment and dismissing Randall-Morgan's counterclaims.

Respectfully submitted,

A. GREGORY GRIMSAL (#6332)
JENNIFER K. CONRAD (#26241)
GORDON, ARATA, McCOLLAM,
DUPLANTIS & EAGAN, L.L.P.
201 St. Charles Avenue, Suite 4000
New Orleans, Louisiana 70170-4000
Telephone: (504) 582-1111
Facsimile: (504) 582-1121

By: _____
    A. GREGORY GRIMSAL (#6332)

Attorneys for MFLC Partners, a Louisiana Partnership in Commendam, Mirabeau Family Learning Center, Inc., Federal National Mortgage Association, and Michael Vales

**C E R T I F I C A T E**

I HEREBY CERTIFY that I have served a copy of the above and foregoing pleading on all counsel of record by placing a signed copy thereof in the United States mail, postage prepaid, on this 27th day of March, 2001.

_____
A. Gregory Grimsal