```
                                    FILED
                              U.S. DISTRICT COURT
                            EASTERN DISTRICT OF LA

                              2001 JUN 29 AM 8:37

                                LORETTA G. WHYTE
                                     CLERK
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MFLC PARTNERS, A LOUISIANA PARTNERSHIP IN COMMENDAM | * * * | CIVIL ACTION NO. 00-0379 |
| | * | SECTION "J" |
| Versus | * | |
| | * | MAG. 1 |
| RANDALL-MORGAN CONSTRUCTION COMPANY, INC. | * * | |

## SECOND AMENDED COUNTER CLAIM

NOW INTO THE COURT, through undersigned counsel, comes Randall-Morgan Construction Company, Inc. ("Randall-Morgan"), a Louisiana corporation domiciled in the Parish of Jefferson, State of Louisiana, who respectfully submits this Second Amended Counter Claim naming Highland Mortgage Company of Alabama as an additional Counter-Defendant and including additional damages, as follows:

1.

Made Counter-Defendants are:

(A) MFLC Partners, a Louisiana Partnership in Commendam ("MFLC"), a Louisiana Partnership in Commendam domiciled in the Parish of Orleans, State of Louisiana;

(B) Mirabeau Family Learning Center, Inc. ("Mirabeau"), a Louisiana corporation domiciled

1



(C) in the Parish of Orleans, State of Louisiana;

(C) Michael Vales ("Vales"), a person of full age of majority domiciled in the Parish of Orleans, State of Louisiana;

(D) Federal National Mortgage Association ("Fannie Mae"), a foreign corporation domiciled in Washington, D.C.; and,

(E) Highland Mortgage Company of Alabama ("Highland"), a foreign corporation domiciled in Birmingham, Alabama.

**2.**

On November 13, 1997, Randall-Morgan executed a contract ("the Contract") with MFLC wherein Randall-Morgan agreed to perform work and supply materials for the renovation of the Filmore Parc Apartments ("the Project"), located in the Mirabeau Gardens Subdivision of New Orleans, Louisiana.

**3.**

The Contract set the amount due to Randall-Morgan for the work to be performed on the Project at $1,165,374.00.

**4.**

MFLC obtained a loan from Highland in order to fund the Project. The loan was guaranteed by the United States Department of Housing and Urban Development ("HUD"). The Contract itself was executed on a HUD form, specifically form HUD-92442-(A)(3194).

**4a.**

In conjunction with the Contract, the MFLC, Randall-Morgan and Highland executed an

agreement on an FHA form, specifically form FHA-2450, also known as the Completion Assurance Agreement, establishing a Letter of Credit in the approximate amount of $252,000.00 (Exhibit 1).

**4b.**

The Completion Assurance Agreement sets forth the limited circumstances and order by which Highland may disburse the funds.

**5.**

MFLC also obtained additional funding for the Project from other sources including Fannie Mae to pay for portions of the Project not specifically detailed or provided for in the Contract.

**6.**

On November 13, 1997, Randall-Morgan also executed an Agreement ("the Agreement") with Mirabeau, the general partner of MFLC, wherein Mirabeau obligated itself to make certain payments to Randall-Morgan, in addition to the stated amount due Randall-Morgan under the Contract.

**7.**

Shortly after the execution of the Contract and the Agreement, Randall-Morgan commenced work on the Project. During construction, Randall-Morgan encountered numerous unforeseen problems with the work to be performed, resulting in increased work and costs.

**8.**

Randall-Morgan obtained one written change order to the Contract, approved by HUD, totaling $98,200.00 to cover some of the additional work and costs of the Project. However, due to

the extensiveness of the problems and the expanding scope of the Project, the need for change orders was so frequent that obtaining written change orders was impractical and would impede the progress of the Project. Moreover, MFLC and/or Vales instructed Randall-Morgan not to request written change orders for the Project in an effort to decrease MFLC's costs of the Project architects. Therefore, many of the changes to the scope of the Project were approved by MFLC and/or Vales and/or Fannie Mae verbally, and all parties were fully aware of the encountered problems and the need for additional work, time and costs.

9.

Furthermore, MFLC and/or Vales made changes to the scope of the Project, ordered materials and personally directed subcontractors to perform work on the Project, thereby increasing Project costs. MFLC and/or Vales directed Randall-Morgan to pay the material suppliers and subcontractors for the materials delivered and work performed by those parties pursuant to MFLC's agreements with them. Some work was ordered without Randall-Morgan's knowledge and some work was ordered over Randall-Morgan's objections.

10.

Although MFLC and/or Vales directed work beyond the scope of the Project and verbally approved change orders, they now deny and refuse to pay Randall-Morgan for the amounts which are now due.

11.

Throughout the course of the construction of the Project by Randall-Morgan, Fannie Mae sent an inspector to the Project site to inspect the progress of the work. After the cost of the Project

had exceeded the amount stated in the Contract, the inspector assured Randall-Morgan that Fannie Mae would pay the additional costs.

**12.**

Randall-Morgan performed the additional work on the Project based on the assurances and representations made by MFLC, Vales and Fannie Mae that it would indeed be paid for the work performed, including additional overhead and profit. At no time during the construction of the Project did any defendant named herein inform Randall-Morgan that it would not be paid for any of the work performed.

**13.**

The actual costs of construction incurred by Randall-Morgan for the Project, as certified and accepted by HUD and Highland, were $1,497,369.44.

**14.**

In addition to the actual costs of construction, Randall-Morgan is entitled to be paid builder's overhead representing 2% of the total costs incurred, or $29,946.78, and builder's profit representing 6% of the total costs plus builder's overhead, or $91,637.13.

**15.**

Randall-Morgan is entitled to receive $1,618,922.67 for the work performed on the Project.

**16.**

Randall-Morgan has only received payments from MFLC through Highland, Fannie Mae, and HUD totaling $1,178,133.74.

**17.**

Randall-Morgan is owed $440,788.93 for actual costs of construction, builder's overhead and builder's profit for the Project ("the Indebtedness").

**18.**

MFLC, Vales, Fannie Mae and/or Mirabeau are liable to Randall-Morgan for the Indebtedness pursuant to the Contract and the Agreement, and their breaches thereof as set forth above.

**19.**

MFLC, Fannie Mae, Mirabeau and/or Vales are liable to Randall-Morgan for the Indebtedness for the amounts encompassed by the verbal change orders authorized by Vales, including those charges for materials purchased and work performed on the Project without the knowledge or consent of Randall-Morgan and/or despite the objections of Randall-Morgan.

**20.**

Alternatively, MFLC, Mirabeau, Fannie Mae and/or Vales are liable to Randall-Morgan for the Indebtedness based upon their fraudulent misrepresentations to Randall-Morgan that the additional costs incurred by Randall-Morgan were approved and that Randall-Morgan would be paid for those costs. These fraudulent misrepresentations caused MFLC, Mirabeau and/or Vales to gain an unjust advantage over Randall-Morgan and caused Randall-Morgan substantial loss.

**21.**

In the further alternative, MFLC, Mirabeau, Fannie Mae and/or Vales are liable to Randall-Morgan for the Indebtedness based upon detrimental reliance; as MFLC, Mirabeau, Fannie Mae

and/or Vales knew or should have known that their promises of payment to Randall-Morgan induced Randall-Morgan to reasonably rely on those promises to its detriment, causing Randall-Morgan substantial loss.

22.

In the further alternative, MFLC, Mirabeau and/or Vales are liable to Randall-Morgan for the Indebtedness because they have been unjustly enriched by Randall-Morgan's work on the Project.

23.

Fannie Mae is liable to Randall-Morgan for the Indebtedness based upon the representations made by its inspector and agent that the costs for the changes requested which were beyond the scope of the Contract would be paid by Fannie Mae.

24.

Alternatively, Fannie Mae is liable to Randall-Morgan for the Indebtedness based upon its inspector's fraudulent misrepresentations to Randall-Morgan that the costs for the changes requested which were outside the scope of the Contract would be paid by Fannie Mae, which representations caused Fannie Mae, MFLC, Mirabeau and/or Vales to gain an unjust advantage over Randall-Morgan and caused Randall-Morgan substantial loss.

25.

In the further alternative, Fannie Mae is liable to Randall-Morgan for the Indebtedness based upon unjust enrichment and detrimental reliance, as Fannie Mae knew or should have known that the promises made by its inspector to Randall-Morgan that Fannie Mae would pay for the work performed induced Randall-Morgan to reasonably rely on those promises to its detriment causing

Randall-Morgan substantial loss.

**26.**

Randall-Morgan voluntarily left the Project in February of 1999 at the request of MFLC and/or Michael Vales and upon an agreement among all Parties that Randall-Morgan would be paid all monies presently due to it for performance of work under the Contract.

**27.**

The project was completed in the fall of 1999. Yet, MFLC, Highland, Mirabeau, Vales, and Fannie Mae failed to close on the property and have yet to close on the property to secure a permanent mortgage lender thereby incurring excessive loan extension fees in the approximate amount of $116,342.48 (Exhibit 2).

**28.**

In a letter of March 21, 2001, MFLC requested that Highland obtain approval of HUD to draw down the Letter of Credit to cover items of *alleged* damage *allegedly* caused by Randall-Morgan's failure to complete the project in a timely manner.

**29.**

In addition, MFLC alleged that is was due $38,752.00 for the costs of repairing items of defective workmanship on the Project.

**30.**

By letter of April 30, 2001, HUD authorized Highland to draw down $155,094.48 from the Letter of Credit. Highland has indeed drawn down such amount. MFLC is expected to receive a portion of these funds, namely $38,752.00.

**31.**

Pursuant to the Completion Assurance Agreement, the release of these funds was not authorized nor properly disbursed. (Exhibit 1). The Completion Assurance Agreement sets forth a specific order of dispersal that was not followed by Highland. MFLC and/or Highland are in violation of the contract and/or agreement.

**32.**

Since no breach or default on the Contract occurred, MFLC and/or Highland are in violation of the Contract and/or Agreement.

**33.**

Highland as custodian of this trust account has breached its fiduciary duties.

**34.**

Randall-Morgan has incurred damages as a result of MFLC and Highland's actions for which it is entitled to recover the monies drawn from the Letter of Credit, namely $155,094.48, and for any other monies that may be improperly drawn between now and the time of trial.

**35.**

MFLC and Highland are liable for the wrongful conversion of these funds and for all damages resulting therefrom.

**36.**

Randall-Morgan re-asserts all of the allegations contained in its Answer to MFLC's Original Petition.

**37.**

Randall-Morgan requests a trial by jury on all issues triable by jury.

**WHEREFORE**, Randall-Morgan Construction Company, Inc. prays that MFLC Partners, a Louisiana Partnership in Commendam, Mirabeau Family Learning Center, Inc., Michael Vales, Fannie Mae, and Highland Mortgage Company of Alabama be cited and served to appear and answer the foregoing Second Amended Counter Claim and, after due proceedings, that there be judgment in favor of Randall-Morgan Construction Company, Inc. and against MFLC Partners, a Louisiana Partnership in Commendam, dismissing Plaintiff's claim, and in favor of Randall-Morgan Construction Company, Inc. and against MFLC Partners, a Louisiana Partnership in Commendam, Mirabeau Family Learning Center, Inc., Michael Vales and Fannie Mae, in solido, in the amount of $440,788.93, plus judicial interest from the earliest date provided by law, all costs of these proceedings, and all other relief deemed just and equitable by this Court and further, that Highland Mortgage Company of Alabama and MFLC Partners, a Louisiana Partnership in Commendam be found liable for the wrongful draw on Randall-Morgan's Letter of Credit, in the amount of $155,094.48, and any other monies that may be improperly drawn between now and the time of trial., plus judicial interest from the earliest date provided by law, all costs of these proceedings, and all other relief deemed just and equitable by this Court.

Respectfully submitted,

_____
David J. Halpern (Bar No. 6452)
Bruce M. Danner (Bar No. 4496)
Jill A. Gautreaux (Bar No. 23750)
Maryann G. Hoskins (Bar No. 20869)
Zara Zeringue (Bar No. 22901)
**Halpern, Danner, Martin &Miles, L.L.C.**
3900 North Causeway Boulevard
One Lakeway Center, Suite 605
Metairie, Louisiana 70002
Telephone: (504) 835-6705

**Attorneys for Defendant, Randall-Morgan Construction, Inc.**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon counsel for all parties by facsimile and by placing a copy of the same in the United States Mails, to each properly addressed and postage pre-paid on this 28th day of June, 2001.

_____

Office of Housing
Federal Housing Commissioner

THIS AGREEMENT made this _____ day of _____ 19____, by and between _____
_____ party of the first part, a _____
_____ having an office at _____ (hereinafter called the Contractor),
and _____ party of the second part, a _____ having an office at
_____ (hereinafter called the Owner), and _____
_____ a corporation organized under the laws of the State of _____
having its principal office at _____ (hereinafter with its assigns called the Lender),
party of the third part.

**Witnesseth**

WHEREAS the Contractor and the Owner have entered into a Construction Contract dated _____ 19____, providing for the construction of a housing project as described in said Contract, said project being known as HUD Project No. _____, a copy of said Contract being on file with the Department of Housing and Urban Development, and

WHEREAS the construction of the said project is to be financed by a construction loan made to said Owner by the Lender, which loan is secured by a _____ (hereinafter called the Mortgage), to be insured by the Federal Housing Commissioner (hereinafter called the Commissioner), pursuant to and under the provisions of the National Housing Act, as amended, and

WHEREAS the Lender is unwilling to make advances of mortgage proceeds and the Commissioner is unwilling to insure the Mortgage unless the Contractor shall first furnish proper assurance to the Owner and to the Lender for the performance of the obligations of the Contractor under said Construction Contract including but not limited to:
(a) the completion of said project in accordance with drawings and specifications referred to in said Construction Contract;
(b) the completion of said project free and clear of any liens, claims or encumbrances whatsoever, except for the lien of the insured mortgage;
(c) the payment of all mechanics and laborers employed in the construction of the project at wages prevailing in the locality of the project as determined by the Secretary of Labor in accordance with the Davis-Bacon Act, as amended;
(d) the satisfaction of any loss, damage, expense or claim which the Owner or Lender may suffer or sustain through the failure of the Contractor to fulfill the provisions of (a), (b), or (c) above or through the failure of the Contractor to fulfill all obligations under said Construction Contract.

NOW THEREFORE, in consideration of the mutual promises and undertakings hereinafter contained, and for the purpose of inducing the Commissioner to insure advances of mortgage money during construction, the parties hereto on behalf of themselves, their successors or assigns respectively, undertake and agree that:
1. The Contractor has deposited with the Lender, or if the Lender so elects, with a depository satisfactory to the Lender, a Completion Assurance Fund (hereinafter called the Fund), in the amount of $_____ to secure or indemnify the Owner or Lender, as the case may be, for any expenses, loss, or damage suffered or sustained as the result of any default by the Contractor in the performance of the Construction Contract; it being understood and agreed that said Fund shall at all times be under the control of the Lender or its assigns and is deposited in the form of: (a) cash; (b) securities of, or fully guaranteed as to principal by, the United States of America, which securities shall be freely negotiable or assigned to the Lender; or, (c) an unconditional irrevocable letter of credit issued to the Lender by a banking institution. (Delete what is not applicable).
2. The Lender shall maintain such Fund as a separate trust account to be disbursed in the following order:
(a) To the Contractor or party making such deposit during the course of construction, as may be deemed necessary by the Lender and with prior written approval of the Commissioner, or his/her authorized agent.
(b) To the Owner such portion of the Fund as deemed necessary by the Commissioner to recover any overpayment to the Contractor.
(c) To the Contractor or party making such deposit, the balance of such fund so deposited remaining upon final endorsement of the Mortgage loan for insurance by the Commissioner or his/her authorized agent; except that there shall be withheld from the payment of said balance an amount equal to 2-½% of the total amount of the Construction Contract, which sum is to be retained in such account for a period of fifteen months from the date of completion as defined in the Construction Contract. Said sum shall be held as a fund to guarantee against defects in construction due to faulty materials or workmanship or damage to the mortgaged premises resulting from such defects, which defects or damage become apparent within

Replaces FHA-2450 which is obsolete.                    Page 1 of 2 Pages

**EXHIBIT**

1

one year after the date of the aforesaid completion. Said sum may be used for the correction of such defects or damage in the event the Contractor fails to make such corrections. The Contractor's liability for such corrections is not limited by the amount of such sum.

(d) To the Lender the entire Fund or balance remaining therein in the event of a default by the Contractor under the Construction Contract, to be used by the Lender to indemnify it and the Owner as the case may be, for any loss, damage or expense whatsoever which they may suffer by reason of the Contractor's failure to properly perform said Construction Contract. In any event, any and all disbursements from said Fund shall be made only upon the prior written approval of the Commissioner, or his/her authorized agent.

3. In the event the Lender assigns the Mortgage to the Commissioner at any time during which the Fund has a balance remaining therein in the form of an unconditional irrevocable letter of credit, the Contractor authorizes the Lender to draw the remaining balance of said letter of credit in cash, if so required by the Commissioner, and deliver such cash within 45 days after the assignment is filed for record to the Commissioner to be held in accordance with the terms of this Agreement.

4. Notwithstanding any of the provisions herein contained, it is expressly understood and agreed by all the parties thereto that in the event of a default by the Contractor in any of its obligations under the Construction Contract, the entire Fund or balance remaining therein may, at the option of the Lender and the Commissioner, be paid to the Commissioner together with an assignment of all rights hereunder granted to the Lender and the Owner. The Contractor and Owner hereby consent to the transfer of the rights of the Lender hereunder by assignment in case any other Lender or Lenders should become the Owner or holder of the mortgage.

5. This Agreement shall not alter or limit the obligations and liabilities of the Contractor under the Construction Contract, but shall be deemed to be merely additional security for the performance by the Contractor of the obligations thereunder.

6. It is understood and agreed that in the event the Fund is held by a depository other than the Lender, that said depository is not charged with any duty or responsibility to see to the performance of or compliance with any agreements between any of the parties hereto other than that of paying over said fund as directed in writing by the Lender, nor to see to the application of said Fund after making disbursement as so directed.

IN WITNESS WHEREOF the parties hereto have duly executed these presents the day and year first above mentioned.

Attest:

_____
(Contractor)

By _____

_____
(Owner)

By _____

_____
(Lender)

By _____

*(Seals must be affixed. To be appropriately acknowledged if required by the laws of the State having jurisdiction).*

(Issuing Bank's Letterhead)

Beneficiary-Highland Mortgage Company  Letter of Credit No.:_____
P.O. Box 55465                          FHA Project No.:_____
Birmingham, Alabama 35255               Date:_____

Gentlemen:

For the account of_____(account party)_____,
we hereby authorize you or your transferee to draw on us at sight
up to an aggregate amount of U.S. $_____(amount)_____.

This Credit is irrevocable, unconditional and transferable. This
Credit may be transferred without charge one or more times upon
receipt of your written instructions.

Drafts drawn under this Credit must specify the number of this
Credit and be presented at this office not later than __(expiration
date)____.

This Credit sets forth in full the terms of our obligation to you,
and such undertaking shall not in any way be modified or amplified
by any agreement in which this Credit is referred to or to which
this Credit relates, and any such reference shall not be deemed to
incorporate herein by reference any agreement.

We engage with you that drafts drawn under and in compliance with
the terms of this credit will be duly honored.

                              Yours very truly,


                              (Authorized Signature)
                              Name & Title - If not executed by a
                              Vice President, must have corporate
                              resolution for officer signing

NOTE:   IF LETTER OF CREDIT IS SUBJECT TO UNIFORM CUSTOMS AND
        PRACTICES FOR DOCUMENTARY CREDITS THE LANGUAGE MUST
        REFERENCE 1993 REVISION, INTERNATIONAL CHAMBER OF
        COMMERCE PUBLICATION NO. 500.



**GORDON ARATA McCOLLAM DUPLANTIS & EAGAN LLP**
ATTORNEYS AT LAW

A. Gregory Grimsal
ggrimsal@gamde.com

201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
(504) 582-1111 · Fax (504) 582-1121

May 14, 2001

Ref: 3239-20182

**VIA FACSIMILE & U.S. MAIL**

The Honorable Carl J. Barbier
United States District Judge
Eastern District of Louisiana
500 Camp Street
New Orleans, Louisiana 70130

        Re: MFLC Partners, a Louisiana partnership in commendam v. Randall-Morgan Construction Company, Inc., ED La, No. 00-0379, Sect. "J" Mag. 1

Dear Judge Barbier:

        Through your law clerk, Ms. Genevieve Deshommes, you have asked that I provide some factual background for a telephone status conference to be conducted this afternoon at 3:00 p.m. in the referenced matter. This conference has been requested by counsel for Randall-Morgan in its letter to me of May 14, 2001, with which the Court was copied.

        What has prompted this conference is that a Letter of Credit, furnished by Randall-Morgan Construction Company as security for its performance of the construction contract at issue in this litigation, was drawn down by Highland Mortgage Company, the lender on the project, some time last week. In particular, Highland drew down and retains $155,094.48 from Randall-Morgan's Letter of Credit.

        The legal setting for this security is as follows. The Construction Contract Plus between Randall-Morgan and MFLC Partners, a copy of which document was attached as an exhibit to MFLC's Motion for Summary Judgment heard before the Court on March 28, 2001, requires (at Article 6) that Randall-Morgan furnish to the Owner (MFLC) and the Lender (Highland Mortgage Company) contractual assurance of completion. Pursuant to the Completion Assurance Agreement, Randall-Morgan posted a Letter of Credit with the Lender in the amount of $252,000.00.

625 East Kaliste Saloom Road, Suite 301 · Lafayette, Louisiana 70508-2540 · (337) 237-0132 · Fax (337) 237-3451
1400 One American Place · Baton Rouge, Louisiana 70825-0004 · (225) 381-9643 · Fax (225) 3

GAMD-NO 118181-1

**EXHIBIT 2**

The Honorable Carl J. Barbier
May 14, 2001
Page -2-

    The Completion Assurance Agreement authorizes the Lender to disburse the funds to indemnify the Lender and the Owner for any loss, damage or expense incurred in the event of any default by Randall-Morgan. In a letter of March 21, 2001, and in exercise of its contract rights, MFLC requested that Highland Mortgage obtain approval of HUD to draw down the Letter of Credit to cover items of damage incurred as a result of Randall-Morgan's failure to complete the project in a timely manner as required by the contract. This letter specified several items of such damages, including $116,342.48 loan extension fees due to Highland as a result of completion delays caused by Randall-Morgan and also $38,752.00 for the costs of repairing items of defective workmanship on the project.

    In response to a request for approval from Highland, HUD, by letter of April 30, 2001, authorized Highland to draw down $155,094.48 from the Letter of Credit. Highland has now done so. I am informed by my client that Highland retains the funds and that none of these funds were paid to MFLC.

    Please contact me should the Court require additional information.

    With best regards, I remain

            Very truly yours,

            A. Gregory Grimsal

AGG:sdj

cc: David Halpern, Esq. (w/encl. via fax and U.S. Mail)
   Zara Zeringue, Esq. (w/encl. via fax and U.S. Mail)